## Case No. 4,119.

### DUFFY v. NEALE'S ADM'R.

[Taney, 271.] [1]

Circuit Court, D. Maryland. April Term, 1841.

EXECUTORS AND ADMINISTRATORS—PERSONAL AND REPRESENTATIVE LIABILITY FOR MONEY RECEIVED—ASSIGNMENT—AGENCY.

1. Whenever money or property is lawfully recovered or received by an executor or administrator, in his representative character, he holds it as assets of the estate, and is liable in that character to the party entitled to it.

2. If the decedent was not liable for the money in his life-time, and his administrator, after his death, receives it in his representative character, and the receipt and acquittance of the administrator discharge the debtor, the party entitled to the money may, at his election, hold him responsible, either in his personal or representative character. But the decedent must have held the property, or chose in action, under a contract, express or implied, with the party entitled to the money, and must have been authorized to deal with it and dispose of it in his own name.

3. In such cases, for the purposes of justice, the law permits the party entitled to consider the contract as having been an absolute assignment, and to treat the other party as his assignee, who took the property as his own, and agreed to become debtor to him for the proceeds realized from it; or to regard the contract as one of agency only, in which the property or chose in action is held by the agent, not as his own, but merely as bailee for his principal, and in which he is authorized to receive the proceeds, not as money due to himself, but as money due to the principal, and placed in his hands, subject to the order and direction of his principal.

4. Although, in such cases, either of the contracts above mentioned may have been the real one, yet both cannot exist at the same time, with reference to the same subject-matter, because they are inconsistent with each other.

5. The party entitled may elect to consider either of said contracts the true one, but he cannot proceed upon both.

6. If the party entitled to the money elect to proceed against the administrator in his representative capacity, and recovers a judgment, he cannot afterwards proceed, either at law or in equity, against the administrator, in his individual capacity, or against his individual estate, if he be dead.

TANEY, Circuit Justice. This case has been set down for final hearing, by consent, and has been fully argued by counsel on both sides; and the court have since read the bill, answer and evidence, together with the admissions made by agreement between the parties.

The case, as presented by these proceedings, is this: [John H.] Duffy, the complainant, who was an American citizen, domiciled at Buenos Ayres, shipped a cargo of hides and other property, from the port of —— to Gibraltar, on board of the American schooner President Adams, commanded by Albert P. De Valengin, a citizen of the United States. The bills of lading, and other papers relating to the cargo, were made out in the

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

name of De Valengin, as his property, in order to cover it from the Brazilian cruisers; Buenos Ayres being at that time at war with Brazil. The vessel was, however, captured ·and both vessel and cargo totally lost ·while in the possession of the captors.

After the loss, it was agreed between the complainant and De Valengin that the latter should prosecute a claim for indemnity against the Brazilian government, in his own name, claiming the cargo to have been his own property, and therefore, not liable to capture; and if he succeeded in the claim, the money, when received, to be paid over to the complainant, after deducting from it the proper charges. The claim was accordingly made by De Valengin, who died before the Brazilian government finally decided upon it. After his death, James Neale, of the city of Baltimore, obtained letters of administration on his estate, from the orphans' court of Baltimore county, and continued to prosecute the claim, until he finally succeeded. The claim upon the Brazilian government was made by Neale, as the administrator of De Valengin, and upon the ground that the cargo lost belonged to his intestate, and that he (Neale) was entitled, in his character of administrator, to receive the compensation. The indemnity was paid to him accordingly, as the representative of De Valengin, and the amount received was brought by him into his administration account, in the orphans' court, as a part of the assets of the deceased, which had come to his hands as administrator.

In this state of the business, Duffy, the complainant, sued Neale, as administrator of De Valengin, in this court, for the money recovered as aforesaid from the Brazilian government, claiming the whole amount recovered for the cargo, as due to him, after deducting reasonable expenses and commissions, and pending this suit Neale died. After his death, administration upon his estate was granted to William Ridgeway and Mary ˙Neale and administration de bonis non. on the estate of De Valengin, to Mrs. De Valengin and George G. Belt, as stated in the complainant's bill; and upon the application of the plaintiff (the present complainant) in the suit against Neale above mentioned, a summons was issued against the administrators de bonis non of De Valengin, in order to make them defendants in that suit. They appeared accordingly, and the suit was continued against them, until it came on for trial at November term, 1836.

At the trial, the administrators defended themselves upon the ground that they had no assets of De Valengin in their hands, and also that Neale's estate, and not De Valengin's was liable to the plaintiff; and that the suit against Neale ought to have been continued, after his death, against his own administrators, and not against the administrators de bonis non of De Valengin. These grounds of defence were contested by the plaintiff, and

under the instructions of the court, which are fully set out in the exceptions taken in the circuit court, and which, upon the last-mentioned point, were in his favor, the jury found that $1403.67 were due to the plaintiff from the defendant, in that suit; but that no assets had come to their hands out of which it could be paid.

It appeared at the trial, that Neale's administrators had not paid to the administrators de bonis non, the money recovered from the government of Brazil, nor any part of it; nor had assets from any other quarter come to their hands; and upon the verdict rendered as above stated, judgment was entered in the circuit court in favor of the plaintiff, which has since been affirmed in the supreme court—[De Valengin v. Duffy] 14 Pet. [39 U. S.] 281; so that the present complainant has, at this time, an indefeasible judgment against the administrators de bonis non of De Valengin, for the money received by Neale, as hereinbefore mentioned, which he has a right to enforce against any assets, which may come to their hands from this transaction, and also against any assets which may come to their hands from any other quarter.

The bill in this case was filed after the judgment had been rendered in the circuit court; and in this proceeding the complainant seeks to charge the administrators of Neale with the same debt. He now places his claim upon the ground that the money received by Neale was due to the complainant directly from the Brazilian government; that the bonds given for it by the government belonged to him, and ought to have been delivered to him by Neale; and that he has a right to the proceeds of these bonds in preference to any of the creditors of Neale; and insists that the judgment at law obtained by him against the administrators de bonis non, is no bar to his recovery against Neale's administrators, inasmuch as the said judgment has not been satisfied.

The principles which must govern this case have been decided by the supreme court. It is now settled by the decision of that tribunal, that whenever money or property is lawfully recovered or received by an executor or administrator, in his representative character, he holds it as assets of the estate, and is liable, in that character, to the party entitled to it. In other words, if the deceased was not liable to an action for the money, in his lifetime, and his administrator, after his death, receives it in his representative character, if the receipt and acquittance of the administrator discharged the debtor, the party entitled to the money may, at his election, hold him responsible, either in his personal or representative character.

This decision is founded upon principles of justice. Generally speaking, an executor or administrator is required to give security for the faithful application of the money which may come into his hands in that character;

it was so in the present instance; and Neale could not have obtained the letters, by virtue of which he was enabled to recover this money, without giving security that whatever he received in his character as administrator, should be paid to the parties lawfully entitled; and it would be manifestly unjust, if these sureties were not responsible for money recovered by him, by virtue of the letters of administration thus obtained. He acquires his representative character, and consequently, his right to receive the money, by means of the security he gives for its faithful application; and the law which confers on him the right to receive, protects, by the sureties it requires, the interests of those over whose property his letters of administration give him power.

On the other hand, it would be equally unjust, to compel the party entitled, to resort in all cases to the administrator in his representative character; for it might happen that the estate of the deceased was insolvent, and the administrator might have a personal interest of his own in increasing the fund to be divided among the creditors; and as it is his duty to know whether the money belongs to the estate of the deceased, or to a third person, he would be justly responsible in his personal character, if he carried into the estate of the deceased the money that rightfully belonged to another. The law therefore provides that the party entitled may elect to take his remedy against the administrator, either in his representative or personal character.

In all cases of the description of which we are now speaking, the intestate must have held the property or chose in action, in his lifetime, under a contract, express or implied, with the party entitled to the money, and must have been authorized to deal with it, and dispose of it, in his own name. And for the purposes of justice, the law permits the party entitled to consider the contract as having been an absolute assignment, and to treat the other party as his assignee, who took the property as his own, and agreed to become debtor to him for the proceeds realized from it; or to regard the contract as one of agency only, in which the property or chose in action is held by the agent, not as his own, but merely as bailee for his principal, and in which he is authorized to receive the proceeds, not as money due to himself, but as money due to the principal, and placed in his hands, subject to the order and direction of his principal.

Now, either of these contracts is consistent with the evidence, in a case where the documents and papers, as in the case before us, furnish primâ facie proof, that the property or chose in action belongs to the person in whose possession it is found, and who is exercising over it the rights of property in his own name; and either of the said contracts is also consistent with the evidence, in cases where a factor in possession, is authorized to deal with the property of his principal in his own name, as if he were the real owner, although there should be no transfer to him, evidenced by written documents. But although in all such cases, either of the contracts above mentioned, may have been the real one, yet both of them cannot exist at the same time, with reference to the same subject-matter; because they are inconsistent with each other. They differ in substantial and important particulars, and give a right of action against the representatives of different estates.

The party entitled may, as before stated, elect to consider either of the contracts above mentioned as the true one; and may pursue his remedy against either estate; but he cannot recover against both, because he cannot be allowed to assume the existence of two contracts, which are inconsistent with each other. Nor can he be allowed to speculate on the chances of success, and elect, in the first instance, to proceed to judgment in one aspect of the case, and afterwards resort to the other, if he finds it likely to be more profitable. He may choose between the remedies offered him against two different estates; but he cannot go against both, for the contract which enables him to recover against one, disables him from recovering against the other.

In the case now before the court, the original right of action which the complainant had, upon the contract between him and De Valengin, is merged in the judgment obtained at law. Whatever may have been the real agreement between them, the complainant cannot now go back and seek a new remedy, and try the case over again, either upon the ground that he has not recovered enough, or that the contract was different in its terms from the one which was relied upon by him at the former trial. There was but one contract between De Valengin and complainant, in relation to this claim against the Brazilian government, upon which the complainant had a right to found an action at law; and that right of action has now become a debt by judgment, and can be enforced against those only who are liable upon the judgment. The complainant could not, therefore, by a proceeding at law, charge the administrators of Neale.

His claim, upon principles of equity, would be equally untenable; for it would be evidently unjust, and would retard the settlement of both estates, and be highly injurious to the parties interested in them, if the complainant were suffered to elect one contract, and after he had pursued his remedy upon it to judgment, suddenly desist, and set up another contract, and endeavor to recover the same money from another estate, which was not liable according to the aspect first given to the contract by the complainant himself. In this case, he deliberately made his election, immediately after the death of Neale, and selected the estate which he de-

sired to charge; and after having proceeded upon that election to judgment, we can see no principle of equity or justice, upon which he can now be allowed to contradict what he before contended for, and proceed upon a contract which was thereby repudiated and disavowed, on his part, in the trial at law.

The bill must, therefore, be dismissed, with costs.